Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email: blarsen@shea.law
kwyant@shea.law

*Attorneys for Tokyo Century (USA) Inc.*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BBC GROUP NV, LLC<br><br>☒ Affects this Debtor | Case No. 22-11538-mkn<br>Trustee: Brian Shapiro<br>Chapter 11 Subchapter V<br><br>LEAD CASE<br>Jointly Administered with: |
| In re:<br><br>BBC GROUP CA, LLC<br><br>☒ Affects this Debtor | Case No. 22-11539-MKN<br><br>Chapter 11<br><br>Hearing Date: September 7, 2022<br>Hearing Time: 9:30 a.m. |

**TOKYO CENTURY (USA) INC.'S MOTION TO ALLOW**
**LATE-FILED PROOF OF CLAIMS**

Tokyo Century (USA) Inc. ("Tokyo Century"), assignee of Isuzu Finance of America, Inc., by and through its undersigned counsel, hereby respectfully submits this *Motion to Allow Late-Filed Proof of Claims* (the "Motion") pursuant to 11 U.S.C. §§ 105, 502(b)(9), 726(a), and Federal Rule of Bankruptcy Procedure 9006(b)(1).[1] This Motion is made and based upon the following memorandum of points and authorities, as well as the pleadings and papers on file herein, judicial notice of which are requested, the exhibits attached hereto, and any oral argument that this Court

[1] Unless otherwise stated, all "Chapter" and "Section" references are to Title 11 of the U.S. Code (the "Bankruptcy Code"), all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and all references to "Local Rules" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada (the "Local Rules").

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

will entertain at the time of any hearing set for the Motion.

## BACKGROUND

### A. The Parties and Applicable Loan Documents

1. Debtor BBC Group CA, LLC ("BBC CA" or "Borrower") borrowed $94,105.44 (the "Loan") from Isuzu Finance of America, Inc. ("Isuzu Finance"), Tokyo Century's predecessor in interest, to purchase a refrigerated van as evidenced by a Secured Promissory Note dated August 26, 2020 (the "Note"), which is attached as an Exhibit to Tokyo Century's proof of claim filed in the above-captioned action as Exhibit 1.

2. Under the Note, Isuzu Finance (defined as Lender) was entitled to, at any time, transfer its rights under the Note and other loan documents without prior notice to or the consent of BBC CA (defined as Borrower).

3. In connection with the Note and as additional security for the Loan, BBC Group NV, LLC ("BBC NV" or "Guarantor" and collectively with BBC CA, "Debtors") entered into a Continuing Corporate Guaranty (the "Guaranty") by which it unconditionally guaranteed all of Borrower's obligations under the Note and related loan documents.

4. The Guaranty was also freely assignable by Isuzu Finance without prior notice to or the consent of Guarantor.

5. On or about September 1, 2020, Isuzu Finance and Tokyo Century entered into a Purchase of Loan Contract whereby Isuzu Finance assigned all of its rights, title, and interest under the Note, Guaranty, and other loan documents to Tokyo Century for $77,452.16.

6. Borrower subsequently made loan payments to Tokyo Century pursuant to the Note and other loan documents. As such, Debtors were aware of the assignment and of Tokyo Century's status as a secured creditor.

### B. Debtors Failed to Provide Notice to Isuzu Finance or Tokyo Century

7. On April 29, 2022 (the "Petition Date"), Debtors filed their respective Chapter 11 Sub Chapter V Voluntary Petition (the "Petition"), initiating the above-captioned bankruptcy

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

proceedings.[2]

8. A review of Debtors' respective Petitions shows that neither Isuzu Finance nor Tokyo Century was listed as a creditor or notice party. *See* ECF No. 1 in both the BBC CA Bankruptcy Proceeding and the BBC NV Bankruptcy Proceeding.

9. Further, neither Isuzu Finance nor Tokyo Century was identified as a party receiving notice of the BBC CA Bankruptcy Proceeding in the certificates of service filed in the BBC CA Bankruptcy Proceeding at ECF Nos. 9 and 10. The same holds true with the BBC NV Bankruptcy Proceeding. *See* [ECF No. 8] in the BBC NV Bankruptcy Proceeding.

10. When BBC CA filed its bankruptcy schedules [ECF No. 26] on May 25, 2022, it erroneously identified Isuzu Finance as a secured creditor holding a lien against an "Isuzu Delivery Truck" valued at $40,000.[3] However, it appears that Isuzu Finance was not immediately added to the list of creditors in the BBC CA Bankruptcy Proceeding as subsequent certificates of service filed therein at ECF Nos. 34, 39, and 42 make no mention of Isuzu Finance.

11. Tokyo Century was not identified as a creditor or notice party in either of Debtors' bankruptcy schedules, Debtors' amended bankruptcy schedules, or any other document filed in these matters.

12. Moreover, Tokyo Century is not identified on as a party receiving notice in any certificate of service filed in these matters.

13. On or June 30, 2022, it appears the Office of the U.S. Trustee served a copy of its *Objection and Reservation of Rights to the Application for the Employment of the Ballstaedt Law Firm* [ECF No. 50] filed in the BBC CA Bankruptcy Proceeding on Isuzu Finance as evidenced by the certificate of service filed at ECF No. 51. This appears to be the earliest, and likely only, document filed in either of the bankruptcy proceedings that was served on Isuzu Finance.

---

[2] *In re BBC Group NV, LLC*, Case No. 22-11538 shall be defined herein as the "BBC NV Bankruptcy Proceeding" and *In re BBC Group CA, LLC*, Case No. 22-11539 shall be defined herein as the "BBC CA Bankruptcy Proceeding".

[3] *See* ECF No. 26, item 2.1. This secured claim is not identified as contingent, unliquidated, or disputed. In addition to incorrectly identifying Isuzu Finance as the holder of this claim, Debtor also misstates the amount of the claim as $40,000. The correct amount this claim is at least $59,159.38.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

14. The proof of claim bar date in both the BBC NV Bankruptcy Proceeding and the BBC CA Bankruptcy Proceeding was July 8, 2022.

15. Tokyo Century first became aware of either of Debtors' bankruptcy cases on July 13, 2022, when it received a copy of a filing in this case via first class mail.

16. Tokyo Century filed its proof of claim in the BBC NV Bankruptcy Proceeding [Claim No. 10] on August 3, 2022. Tokyo Century filed its proof of claim in the BBC CA Bankruptcy Proceeding [Claim No. 12] on August 3, 2022.

17. As such, Tokyo Century was unaware of Debtors' respective bankruptcy proceedings until after the proof of claim bar date had passed.

18. Thus, Tokyo Century now requests that the Court allow its late-filed proof of claims in the BBC NV Bankruptcy Proceeding and the BBC CA Bankruptcy Proceedings, attached hereto as <u>Exhibit 1</u> and <u>Exhibit 2</u>, respectively, as if the same were timely filed.

**JURISDICTION AND VENUE**

19. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 502(b)(9), 726(a), and Federal Rule of Bankruptcy Procedure 9006(b)(1).

**ARGUMENT**

20. As a known creditor, Tokyo Century was entitled to notice of the proof of claim bar date. Because Debtors, each of them, failed to notify Tokyo Century of both the filing of their respective cases and the proof of claim bar date, Tokyo Century's proof of claims should be treated as timely filed.

21. Alternatively, because Tokyo Century's failure to timely file its proof of claim was the result of excusable neglect under the standard set forth by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 387-99 (1993), Tokyo Century respectfully requests that the Court deem its proof of claims as timely filed.

///

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**A. Tokyo Century Is a Known Creditor and Was Entitled to Notice of the Bar Date.**

22. Generally, "a debtor must list a creditor whose identity and claim he knows" and "the burden is on the debtor to cause formal notice to be given." *In re Maya Const. Co.*, 78 F.3d 1395, 1399 (9th Cir. 1996).

23. Indeed, the Ninth Circuit has recognized the importance of due process in bankruptcy proceedings, acknowledging that "it is a fundamental principle of due process that known creditors of a debtor are entitled to actual notice of a claims bar date before their claims can be extinguished." *In re Reg'l Care Servs. Corp.*, No. AZ-16-1213, 2017 Bankr. LEXIS 1880 (B.A.P. 9th Cir. July 5, 2017) (citing *City of New York v. N.Y., New Haven & Hartford R.R.*, 344 U.S. 293 (1953)); *see also In re Maya Constr. Co.*, 78 F.3d at 1399.

24. As relevant here, the Supreme Court held in *City of New York v. New York, New Haven & Hartford R.R.* that a known creditor is entitled (1) to actual notice of a bar date and (2) to file its claim after the bar date has passed if the creditor does not receive actual notice of the bar date.

25. Here, Tokyo Century was and continues to be a known creditor holding a claim arising out of the Note, Guaranty, and related loan documents as BBC CA made several years of payments to Tokyo Century under these documents. Based on the interrelatedness of BBC and BBC NV, it is highly doubtful that BBC NV was also not aware of Tokyo Century's status as a creditor.

26. Despite this knowledge, Debtors failed to provide Tokyo Century with any notice of their respective pending bankruptcy proceedings or the claim bar date.

27. Because Debtors never provided Tokyo Century, a known creditor, with actual notice of the bar date, Tokyo Century should now be allowed to file its proof of claim. *See City of New York*, 344 U.S. at 297.

**B. Alternatively, Tokyo Century's Failure to File Its Proof of Claims Prior to the Bar Date Was Excusable Neglect under Rule 9006(b)(2).**

28. Under Rule 9006(b)(2), courts have discretion to allow a party to file a tardy proof of claim "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1);

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

*see Pioneer*, 507 U.S. at 387-99. Allowing late-filed claims in appropriate circumstances advances Chapter 11's goal of "avoiding forfeiture by creditors." *Id.* at 389.

29. The determination of whether neglect may be considered excusable is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395.

30. The factors the court must consider in performing this evaluation "include…the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*; *see also In re Zilog, Inc.*, 450 F.3d 996, 1003 (9th Cir. 2006).

31. In this case, the *Pioneer* factors all weigh in favor of finding excusable neglect and allowing the proof of claim to be filed at this time. As explained below, Debtors will not be prejudiced by the late filing, and the length of delay is not extreme under circuit precedent. Further, allowing the late filing will not materially affect the administration of the estate. The delay preceding this filing is largely attributable to Debtors' unexplained failure to notify Tokyo Century of these bankruptcy cases. Tokyo Century acted diligently upon finding out about Debtors' respective bankruptcy proceedings and is acting in good faith with the filing of this Motion.

*i. Debtors Will Not Suffer Prejudice.*

32. The "central inquiry" under *Pioneer* is the danger of prejudice to the debtor. *See Pioneer*, 507 U.S. at 395.

33. However, there is a lack of prejudice here because the primary reason for Tokyo Century's current Motion is Debtors' failure to provide notice to Tokyo Century regarding the claim bar date and this bankruptcy proceeding. Tokyo Century should not suffer for Debtors' mistakes. Tokyo Century's claim (erroneously identified as a claim held by Isuzu Finance) is already acknowledged by BBC CA as undisputed. *See* ECF No. 26, item 2.1 in the BBC CA Bankruptcy Proceeding. Although the claim amount from Debtor BBC CA's schedules is wrong, Debtors were clearly aware of the outstanding secured indebtedness owed to Tokyo Century when filing their

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

respective schedules. Thus, Debtors, each of them, will not be prejudiced as they were already aware of Tokyo Century's claim.

*ii.* *The Length of Delay Is Insignificant and Will Have No Impact on Case Administration.*

34. In considering the length of delay, courts should focus on how the delay will affect the administration of the case if the tardy filing is allowed. *Pioneer*, 507 U.S. at 395.

35. The claim bar date for both bankruptcy proceedings was July 8, 2022. This Motion is being made within four weeks of the claim bar date. The Ninth Circuit has approved much longer delays under similar circumstances. *See In re Dix*, 95 B.R. 134, 138 (B.A.P. 9th Cir. 1988) (approving a delay of two years when there was no plan yet approved by the court and there was no reason to believe that allowing the claim would impact timely administration of the case).

36. Here, there is no plan on file. Debtors' chapter 11 plan due date is not until October 26, 2022, which is well after the time by which this Motion should be heard and resolved. As such, this Motion should be granted because the delay is minimal and will have no effect on the estate's administration.

*iii.* *The Delay Is Not Due to Any Fault of Tokyo Century.*

37. As stated herein, Tokyo Century's failure to file its proof of claim prior to the bar date was entirely the result of Debtors' failures to provide proper notice to Tokyo Century.

38. Tokyo Century did not learn of Debtors' bankruptcy proceedings until July 13, 2022. Thereafter, it quickly worked to retain counsel to assist with the filing of its proof of claim and the present Motion within three weeks of first receiving notice of this matter.

39. As such, Tokyo Century acted diligently and in good faith in bringing the present Motion, which should be granted in its entirety.

///

///

///

///

///

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**CONCLUSION**

40. Accordingly, Tokyo Century respectfully requests that the Court enter an order allowing Tokyo Century's late filing of its proof of claims in each of the Debtors bankruptcy estates as if the same had been timely filed.

Dated this 3rd day of August, 2022.

**SHEA LARSEN**

/s/ *Bart K. Larsen, Esq.*

Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Tokyo Century (USA) Inc.*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**CERTIFICATE OF SERVICE**

1. On August 3, 2022, I served the following document(s): **TOKYO CENTURY (USA) INC.'S MOTION TO ALLOW LATE-FILED PROOF OF CLAIMS**

2. I served the above document(s) by the following means to the persons as listed below:

☒ a. ECF System:

SETH D BALLSTAEDT on behalf of Debtors BBC GROUP CA, LLC and BBC GROUP NV, LLC
help@bkvegas.com

U.S. TRUSTEE – LV – 7, U.S. Trustee
USTPRegion17.LV.ECF@usdoj.gov

EDDIE R. JIMENEZ on behalf of Creditor JPMORGAN CHASE BANK N.A.
ecfnvb@aldridgepite.com

VICTOR A. SAHN on behalf of Creditor 2144,2146 COLORADO BLVD., LLC
Victor.sahn@gmlaw.com

MARCUS G. TIGGS and MARTIN L. WELSH on behalf of Creditor OVERLAND SEPULVEDA PARTNERS, LLC
mwelsh@lvlaw.com

DAVID A. CARROLL on behalf of Creditor PALM DELUXE PLAZA, LLC
dcarroll@rrsc-law.com

SHLOMO S. SHERMAN on behalf of Creditor DYNAMIC TOWN SQUARE LAS VEGAS, LLC
shlomo@shermanlawlv.com

☐ b. United States mail, postage fully prepaid:

☐ c. Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐ For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d. By direct email (as opposed to through the ECF System): Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

unsuccessful.

☐ e. By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f. By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 3, 2022.

By: /s/ *Bart K. Larsen, Esq,*

# **EXHIBIT 1**

**Fill in this information to identify the case:**

Debtor 1 BBC Group NV, LLC

Debtor 2 (Spouse, if filing) ______

United States Bankruptcy Court for the: District of Nevada

Case number 22-11538-mkn

Official Form 410

# Proof of Claim

**04/19**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   Tokyo Century (USA) Inc.
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor ______

2. **Has this claim been acquired from someone else?**

   ☑ No
   ☐ Yes. From whom? ______

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Name: Dressler Peters, LLC | Name: |
| Number Street: 70 W. Hubbard St., Ste. 200 | Number Street: |
| City: Chicago State: IL ZIP Code: 60654 | City State ZIP Code |
| Contact phone: 312-602-7360 | Contact phone |
| Contact email: ddressler@dresslerpeters.com | Contact email |

   Uniform claim identifier for electronic payments in chapter 13 (if you use one):
   __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

   ☑ No
   ☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☑ No
   ☐ Yes. Who made the earlier filing? ______

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ 58,159.38. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Guaranty of Secured Promissory Note

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ____________________

**Basis for perfection:** ____________________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $__________

**Amount of the claim that is secured:** $__________

**Amount of the claim that is unsecured:** $__________(The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $__________

**Annual Interest Rate** (when case was filed)_______%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $__________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

- [x] No
- [ ] Yes. *Check one:*

| | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $____________ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $____________ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $____________ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $____________ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $____________ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $____________ |

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

- [ ] I am the creditor.
- [ ] I am the creditor's attorney or authorized agent.
- [ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
- [ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 07/26/2022
MM / DD / YYYY

/s/ Dennis A. Dressler
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Dennis A. Dressler
First name / Middle name / Last name

Title: Attorney

Company: Dressler Peters, LLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 70 W. Hubbard St., Ste. 200
Number Street

Chicago, IL 60654
City State ZIP Code

Contact phone: 312-602-7360

Email: ddressler@dresslerpeters.com

## PURCHASE OF LOAN CONTRACT

This Purchase Of Loan Contract (this "Purchase Contract") is executed pursuant to the Master Loan and Sale and Assignment Agreement dated as of May 16, 2007 (the "Agreement"), by and between ISUZU FINANCE OF AMERICA, INC., as Assignor, and TOKYO CENTURY (USA) INC., as Assignee.

This Purchase Contract is dated, and the assignment described below is effective, as of the date set forth below and hereby expressly incorporates the terms and conditions of the Agreement.

| | |
|---|---|
| 1. Dealer | Thorson GMC Truck - Buick Motor Co. |
| 2. Obligor (Borrower) | BBC Group CA, LLC |
| 3. Guarantor | Chamanian, Silva |
| 4. Date of (Loan) Contract | 8/26/2020 |
| 5. Contract Documents (See Schedule A) | |
| 6. Total Invoice Cost (Amount Financed) | $73,415.70 |
| 7. Payments to be due under Purchase Contract | |
| (a) Term | 72 |
| (b) Amount of each payment | $1,307.02 |
| (c) Balloon Payment | $1,307.02 |
| 8. Consideration (6) | $73,415.70 |
| 9. Acquisition Fee to Assignee (TCUSA) | $250.00 |
| 10. Referral Fee | $700.00 |
| 11. Dealer Markup | $3,586.46 |
| 12. Purchase Amount (8-9+10+11) | $77,452.16 |

Date of Execution: September 1, 2020

ASSIGNOR: ISUZU FINANCE OF AMERICA, INC.

By: ______________________
Name: Martin Carr
Title: Vice President

ASSIGNEE: TOKYO CENTURY (USA) INC.

By: ______________________
Name: ADAM R RAMIREZ
Title: Executive Vice President

LN134245

## Isuzu Finance of America, Inc.

## Secured Promissory Note

**Borrower:** BBC Group CA, LLC
Address: 3815 Fairmeade Road
Pasadena, CA 91107

**Lender/Creditor:** **ISUZU FINANCE OF AMERICA, INC.**
Address: 2500 Westchester Ave., Suite 312
Purchase, New York 10577
Attention: Operations

Date: 08/26/2020

| Year | Make | Model | Vehicle Identification Number | License Number (if applicable) | | Use For Which Purchased |
|---|---|---|---|---|---|---|
| 2020 | Isuzu | NQR | JALE5W163L7902052 | | ☒ NEW ☐ Demonstrator ☐ Other | ☒BUSINESS OR COMMERCIAL |

**Description of Vehicle's Body/Attachments:** 16' Morgan Insulated Van Body with Thermo King V-520-20 Refrigeration Unit
**Vehicle Body/Attachments Serial Numbers:** Body: MSC20A2771001 Refrigeration Unit: HTG1239191
**Gross Vehicle Weight:** 17950
**Address where Vehicle will be located:**
Street Address: 3815 Fairmeade Road
City/State/Zip: Pasadena, CA 91107

**Interest Rate:** 8.55 % per annum.

| | | |
|---|---|---|
| 1. Vehicle Cash Sales Price | | $79,645.00 |
| 2. Net Trade-in Less Liens | | $0.00 |
| 3. Cash Down Payment | | $15,800.00 |
| 4. Net Vehicle Cash Sales Price (1-2-3) | $63,845.00 | |
| 5. Other Taxable Charges (Explain) | $0.00 | |
| 6. Sales Tax | $8,085.20 | |
| 7. Registration/Title Fees | $1,140.00 | |
| 8. Other Charges | | |
| Acquisition Fee | $250.00 | |
| Documentation Fee | $85.00 | |
| California Tire Fee | $10.50 | |
| 9. Total Itemized Charges (5 through 8) | | $9,570.70 |
| 10. Amount Financed (4 + 9) | | $73,415.70 |
| 11. Finance Charge | | $20,689.74 |
| 12. Other (Explain) | | |
| 13. Total Obligation (10+11+12) | | $94,105.44 |

Borrower agrees to pay the "Total Obligation" (Item 13) in accordance with the following schedule (and any additional page(s) of schedule attached):

| No. of Installments | First Payment Date | Payment Amount | Total |
|---|---|---|---|
| 72 | | $1,307.02 | $94,105.44 |

If shown below, Borrower has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Borrower agrees that Lender collects such fees and charges for the service provider only as an accommodation to Borrower and such agreements are not part of this Contract. The Lender is not responsible for any services, disposables or insurance obligations.

| Service | Term (mos.) | Total Charge |
|---|---|---|
| Extended Warranty | 60/200,000 | $850.00 |
| | | |

**Total Charge Is Included In "Vehicle Cash Sales Price"**

1. **Promise to Pay and Interest.** The below-signed borrower, and if more than one, each below-signed borrower, jointly and severally (the **"Borrower"**), promises to pay in full the Total Obligation set forth in Item 13 above to Isuzu Finance of America, Inc. (**"Lender"**) in lawful money of the United States of America, with interest thereon as herein provided, to be paid in the manner set forth herein. All interest due under the Loan Documents (as defined below) shall be computed on the basis of a 360-day year and accrue on a daily basis for the actual number of days elapsed. Borrower agrees to pay an effective rate of interest that is the Interest Rate set forth on page 1 (the **"Interest Rate"**). Borrower shall also be liable for and shall pay when due any other charges or fees paid or to be paid in connection with the Loan Documents. In addition to the Total Obligation, Borrower agrees to pay all other amounts owed to Lender under this Note and the other Loan Documents (collectively with the Total Obligation, the **"Indebtedness"**) when due. Payment of the Indebtedness shall be made to Lender at such place as Lender or its successor may designate from time to time in writing. Lender reserves the right to require payment on this Secured Promissory Note to be made by wired federal funds or other immediately available funds. **"Loan Documents"** shall mean this Secured Promissory Note (this **"Note"**); all other notes (or other instruments) made by, or other obligations of, Borrower to Lender; any guaranty(ies) of any payment or performance of the Indebtedness; and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to this Note or the credit evidenced hereby, as any or all of such documents may be executed or amended from time to time.

2. **Security Interest**. In order to secure payment of the Indebtedness and complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into (the **"Secured Obligations"**), Borrower hereby grants to Lender a security interest in and to the Vehicle and such other equipment and goods as are described above (collectively, the **"Equipment"**), together with all present and future attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory loans, warranties, service contracts, documents, and records now or hereafter arising from the Equipment (collectively, the **"Collateral"**). Borrower authorizes Lender to file a financing statement, or a photocopy or other reproduction of this Note, or of any financing statement, to perfect its security interest. Principal shall bear interest at the Interest Rate from the date of disbursement until the applicable due date, whether due by acceleration or otherwise. Any payment due on a date which is a date when banking institutions are not open to the public under the laws of the State of New York shall be due on the next succeeding date on which such institutions are open. All Indebtedness not paid when due shall bear interest from the due date, until paid at a rate (the **"Default Rate"**) which is the lesser of sixteen percent (16%) per annum or the maximum rate permitted under applicable law. Borrower is responsible for assuring that a lien on the Collateral in favor of the Lender is properly recorded on any title to the Collateral and that such lien remains in full force and effect until all amounts due Lender hereunder shall have been paid in full.

3. **Receipt and Application of Payments**. Payments shall not be deemed received by Lender until good funds are actually received by Lender. Payments in respect of the Secured Obligations and any proceeds of the Collateral when received by Lender in cash or its equivalent, will be applied in reduction of the Secured Obligations in such order and manner as Lender may direct in its sole discretion, and Borrower irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Lender shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Lender's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

4. **Prepayment**. So long as no Default or Event of Default shall have occurred and be continuing and Borrower shall have given Lender at least fourteen (14) days prior written notice, Borrower shall have the option to prepay this Note on any installment Due Date set forth on page 1 of this Note (or any accompanying schedule referred to on page 1 of this note) (each, an **"Installment Due Date"**) for an amount (the "Prepayment Amount") equal to (1) any unpaid Payment Amounts and all other amounts due on or before such Installment Due Date, plus (2) the principal outstanding on the books and records of the Lender on such Installment Due Date, plus (3) any applicable sales taxes. Payment of the Prepayment Amount, together with all other amounts due and owing by Borrower under the Note (including, without limitation, the scheduled Payment Amount) on or before the Installment Due Date, shall be made on the Installment Due Date in immediately available funds. If Borrower shall fail to pay all amounts required to be paid under the Note on the Installment Due Date, the Note shall continue in full force and effect and Borrower agrees to reimburse Lender for all reasonable attorney's fees, costs, expenses and liabilities incurred in connection therewith.

5. **Late Charges**. If any payment of principal and interest or any other Indebtedness is not received in full by Lender within ten (10) days after its due date, then in addition to all other rights and remedies of Lender, a late charge equal to ten percent (10%) of the amount due and unpaid will be charged to Borrower or such lesser amount as shall be the maximum permissible late charge thereon. Such late charge shall be immediately due and payable upon receipt of written notice from Lender and constitute **"Indebtedness"** and a **"Secured Obligation"** under this Note.

6. **No Counterclaims, Deductions, or Offsets**. All payments and obligations of Borrower under the Loan Documents will be made and performed without counterclaim, deduction, defense, deferment, set-off, or reduction.

7. **Insurance and Risk of Loss**. All risk of loss, damage or destruction of the Equipment will at all times be on Borrower. Borrower will keep the Equipment insured at Borrower's expense against liability in an amount as required by Lender or, if in excess thereof, the amount required under applicable law, and loss or damage by fire, theft and other customary risks for the greater of the Equipment's full insurable value or the Indebtedness, with a deductible not to exceed $2,500 per item of Equipment, or such lesser amount as shall be required by applicable law. Coverage and insurer will be subject to Lender's reasonable approval. Each policy shall name Lender as loss payee and will further provide that Lender's interest can not be invalidated by any act, omissions or neglect of any party other than Lender and that the insurer will give Lender thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Borrower or insurer. Borrower will promptly deliver a copy of each policy or an insurance certificate acceptable to Lender prior to any advancement of funds hereunder, and will later provide proof of renewal at least 30 days prior to expiration or cancellation. If Borrower fails to so insure the Equipment, Lender may purchase such insurance at Borrower's expense, the purchase of which need not include liability or protection of Borrower's interest. Borrower hereby authorizes and irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution, to execute and endorse all documents, checks, or drafts in Borrower's name and to submit any proof of loss to collect such insurance.

8. **Borrower's Representations, Warranties, and Agreements**. Borrower represents, warrants, and agrees that: (a) this Note evidences a loan obtained by it, and the Equipment is to be used by it, solely for business or commercial purposes; (b) prior to signing this Note, Borrower read and understood the provisions hereof, and agrees to all the terms and conditions contained herein; (c) except for the security interest granted to Lender, the Collateral will remain free from all liens and security interests; (d) all information supplied by Borrower in any financial, credit, or accounting statement to Lender is and will be true, correct and genuine, and Borrower consents to the Lender's prior review of Borrower's credit reports prior to the date of this Note and to the ongoing review of Borrower's credit reports during the term of the credit evidenced by this Note; (e) Borrower has full authority to borrow the credit evidenced by this Note for the purposes provided for herein and to enter into each Loan Document to which it is a party, and in so doing it is not violating any law, regulation or agreement; and (f) Borrower has duly executed and delivered this Note and has taken all necessary and appropriate actions to make each Loan Document to which it is a party binding and enforceable against Borrower in accordance with its terms. Borrower covenants and agrees that: (i) it shall not allow a Blocked Person to have an ownership interest in or control of Borrower, (ii) it shall defend at its own cost any action, proceeding or claim affecting the Collateral; (iii) it shall maintain each item of the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and any warranties; (iv) it shall promptly pay all taxes, assessment, license fees and other public or private charges when levied against the Collateral or any Loan Document; (v) it shall obtain a certificate of title on each item of Equipment showing Lender's first priority security interest and preserve and perfect Lender's security interest, such that such security interest shall at all times be a first priority perfected security interest subject to no other liens or encumbrances by authorizing Lender to file financing statements covering the Collateral and also execute any required financing statements; (vi) it shall not misuse, secrete, sell, rent, encumber or transfer any item of Equipment; (vii) that Lender may enter any premises at any reasonable time to inspect the Equipment; (viii) it shall provide Lender with quarterly and annual financial statements upon request of Lender; and (ix) it shall reimburse Lender immediately after written notice for any expenses incurred by Lender in enforcing Borrower's obligations under any Loan Document. [As used herein, the term "Blocked Person" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) a person or entity whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law.]

9. **Events of Default**: Each of the following shall be an event of default under this Note and the other Loan Documents (an **"Event of Default"**): (a) failure by the Borrower, or any other person (each, a **"Loan Party"**; and collectively with the Borrower, the **"Loan Parties"**) that from time to time is obligated to Lender under any of the Loan Documents, to pay when due (i) any amount due by such Loan Party under any of the Loan Documents, or (ii) any other amount due by a Loan Party to Lender under any other agreement or contract or indebtedness of any kind; (b) failure by any Loan Party to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to such Loan Party, in any of the Loan Documents and such obligation or term or condition remains unsatisfied after ten (10) days' written notice to such Loan Party; (c) the breach of any covenant, or any representation or warranty made by any Loan Party in any of the Loan Documents or otherwise or any information delivered by any Loan Party to Lender in obtaining or hereafter in connection with the credit evidenced by this Note is materially incomplete, incorrect, or misleading as of the date made or delivered; (d) any Loan Party (i) is unable or admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors or (iii) applies for or acquiesces in the appointment of a trustee, receiver, or other custodian for such Loan Party or any of the property of such Loan Party or a trustee, receiver or other custodian is appointed for such Loan Party or any of the property of such Loan Party; (e) commencement of any insolvency or bankruptcy proceeding, or any similar proceeding under any federal, state, local, or foreign law by or against any Loan Party; (f) the death, incompetence, dissolution, or liquidation of any Loan Party; the consolidation or merger of any Loan Party with any other person or entity; or the taking of any action by any Loan Party toward a dissolution, liquidation, consolidation, or merger; (g) any Loan Party or any other person on behalf of any Loan Party claims that any Loan Document or any lien or security interest in any of the Collateral is not legal, valid, binding, or enforceable against any Loan Party, or that that the priority of any lien or security interest securing any of the Secured Obligations is different than the priority represented and warranted in the Loan Documents; (h) any of the Collateral is lost or destroyed; (i) Lender in good faith believes that the prospect of payment or performance hereunder is impaired; (j) there shall be a material change in the management, ownership or control of any Loan Party; (k) if there shall occur an (i) appropriation, (ii) confiscation, (iii) retention, or (iv) seizure of control, custody or possession of any Collateral by governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder collectively be referred to as **"Governmental Authority"**); (l) if anyone in the control, custody or possession of any Collateral or any Loan Party is accused, alleged or charged

(whether or not subsequently arraigned, indicted or convicted) by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); or (m) the occurrence of any condition or event that is a default or is designated as a default or event of default or an **"Event of Default"** under any other Loan Document or in any other agreement, contract, or indebtedness of any Loan Party to Lender.

10. **Rights and Remedies of Lender**. Upon the occurrence of an Event of Default, Lender may, at its option, and without demand or notice: (a) declare the Indebtedness to be immediately due and payable, whereupon all of the Indebtedness shall be immediately due and payable; (b) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Borrower; (c) require Borrower to make the Collateral available to Lender at a place to be designated by Lender; (d) at the expense of Borrower, make repairs to any item of Equipment deemed necessary by Lender; and (e) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s). The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses) shall be applied to the Indebtedness or any other indebtedness of Borrower to Lender and any surplus remaining thereafter shall be paid to Borrower or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Lender may purchase any or all of the Collateral and/or accept a trade of property for all or any portion of the purchase price. All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Lender and its successors and assigns. No liability shall be asserted or enforced against Lender under this section except for Lender's intentional wrongful acts. Lender may in its sole discretion waive an Event of Default or allow a cure of an Event of Default. Any waiver will not constitute a waiver of any other Event of Default. Delay, discontinuance, or failure to exercise any remedy shall not be a waiver of such remedy or of any other right or remedy of Lender, or of the TIME IS OF THE ESSENCE provision. To the extent permitted under applicable law, Borrower expressly consents to and authorizes a court with jurisdiction to issue, by hearing without notice, such orders as may be necessary to enforce the terms of this Note, granting to Lender such powers as Lender shall need to enforce this Note. Any such court is directed to not require a bond of Lender, the parties agreeing that time is of the essence to protect Lender. To the extent permitted under applicable law, Borrower expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Lender existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, any notice given to Borrower at the address set forth on page 1 of this Note (or to such other address as provided in writing by Borrower) by registered or certified mail at least five (5) days before the date of sale shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Borrower.

11. **Transfer or Assignment**. Lender may at any time transfer its rights and/or delegate its obligations under the Loan Documents or otherwise negotiate this Note in whole or in part, without any notice to or the consent of any Loan Party. The rights and obligations of Borrower may not be assigned or delegated.

12. **Binding Effect**. This Note shall be binding upon Borrower and inure to the benefit of Lender and its successors and assigns. In addition and as permitted under applicable law, NO LOAN PARTY SHALL ASSERT AGAINST ANY ASSIGNEE OR TRANSFEREE OF LENDER ANY CLAIMS OR DEFENSES SUCH LOAN PARTY MAY HAVE AGAINST LENDER.

13. **Collection Costs and Other Costs, Expenses and Fees.** In addition to the principal, interest, and late payment charges (if any), Borrower shall pay Lender on demand, and Lender shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Collateral or in connection with Lender's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed. If this Note is terminated for any reason prior to the expiration of the original Term, then Borrower shall pay to Lender $300.00 on demand for processing the early termination. All such costs, expenses, and fees shall constitute **"Indebtedness"** and **"Secured Obligations"** and shall be payable on demand.

14. **Usury; Partial Invalidity**. At no time shall the interest rate (or the Default Rate or other amounts paid or collected hereunder) exceed the highest rate allowed by applicable law for the type of loan evidenced hereby. Should Lender ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the outstanding principal balance of the loan evidenced hereby.

15. **Severability**. If any provision of any of the Loan Documents is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable, and the enforceability of the other provisions of the Loan Documents shall not be affected.

16. **Choice of Law**. The Loan Documents (including all matters of construction, validity, performance and the creation, validity, enforcement or priority of the lien of, and security interests created by, this Note in or upon the Collateral) and all related controversies shall be governed in all respects by, and construed in accordance with, the laws of the State of New York, without reference to conflicts of law (other than Section 5-1401 of the New York General Obligations Law), except as required by mandatory provisions of law and except to the extent that the validity or perfection of the lien and security interest hereunder, or remedies hereunder, in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York.

17. **Notices and Demands**. All demands or notices under the Loan Documents shall be in writing (including, without limitation, telecopy or facsimile - receipt confirmed) and mailed, telecopied, or delivered to the address specified on page 1 of this Note or in writing by the party to which such notice is given. Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested. Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee, or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

18. **Rescission or Return of Payments**. If at any time or from time to time, whether before or after payment and performance of the Indebtedness in full, all or any part of any amount received by the Lender as payment of any Indebtedness, must or is claimed to be subject to avoidance, rescission, or return to Borrower or any other party for any reason whatsoever, such Indebtedness and any liens, security interests, and other encumbrances that secured such Indebtedness at the time such avoidance, rescission, or returned payment was received by Lender shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

19. **Waivers**. Borrower hereby (a) waives, to the fullest extent permitted under applicable law, the right to assert any statutes of limitations as a defense to any of the Indebtedness, (b) waives, to the fullest extent permitted under applicable law, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents), and (c) agrees that Lender may enforce this Note and any other Loan Document against Borrower without first having sought enforcement against any other Loan Party or any Collateral securing the Indebtedness.

BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH LENDER, BORROWER OR ANY LOAN PARTY MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY, AND BORROWER ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.

LN134245

20. **Power of Attorney**. Borrower grants Lender a power of attorney to correct obvious errors and fill in such blanks as serial numbers, date of first payment and similar provisions, for registering, transferring, titling, or perfecting Lender's interest in the Equipment and for obtaining repossession certificates of title with respect to the Equipment. Such power of attorney is coupled with an interest, is delegable to an agent, and is irrevocable during the term of the credit evidenced by this Note. **Borrower agrees that a photocopy of this Note shall be sufficient evidence on which any third party may rely for evidence of Lender's authority to act pursuant to this and any other power of attorney granted hereby.**

21. **Miscellaneous**. The Loan Documents constitute the entire agreement and understanding of Lender and Borrower and supersede all prior agreements. No provision of any Loan Document can be amended, waived, discharged, or terminated except in writing executed by the parties thereto. Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lender to require that subsequent payments be made when due, or the right of Lender to declare an Event of Default if subsequent payments are not made when due. Any approval, consent, or statement that a matter is acceptable to Lender under the Loan Documents must be in writing executed by Lender and shall be construed to apply only to the party and facts specifically set forth in writing. This Note may be authenticated in one or more counterparts each of which when authenticated shall be deemed an original but all of which together shall constitute one and the same instrument. This Note may: (i) take electronic form (constituting an "Electronic Document") pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act and/or other applicable law, if generated and stored within a secure electronic medium approved by Lender designed for creating and facilitating transactions entered into using so-called "electronic signatures", (ii) take paper form bearing an ink signature, (iii) take the form of a photocopy of such a paper form, (iv) be delivered in PDF or other fixed-file format, (v) be an electronic facsimile, or (vi) be in any other format deemed acceptable by Lender. Each version of this Note originally authenticated in paper form shall constitute a "Counterpart", and must constitute a true, complete, faithful and legible representation hereof. Borrower agrees that all signatures transmitted by facsimile, email or other electronic means, including, but not limited to, Electronic Documents and Counterpart(s) (as applicable) shall be deemed binding and effective for all legal and equitable purposes including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Borrower in accordance with its terms in any and all appropriate forums. Lender may choose to authenticate a Counterpart(s) in writing, through the use of a stamp, or through some other means selected by Lender. (In no event shall any acceptance or acknowledgment be deemed to constitute an indorsement hereof without express use of words to that effect.) **Notwithstanding anything contained herein to the contrary, the version of this Note bearing Lender's original signature, or, if the Note is fully executed electronically, the authoritative copy as defined by the Uniform Commercial Code, shall constitute the sole record of "chattel-paper" for Code purposes. Perfection by possession (control) of same may only be accomplished by: (i) maintaining possession and control of the Counterpart of this Note authenticated by a duly authorized representative of Lender and not otherwise marked "customer copy" (or words to that effect) or (ii) maintaining, as provided in Article 9 of the Uniform Commercial Code, control of the single authoritative copy of this Note, if in the form of an Electronic Document.** *TIME IS OF THE ESSENCE IN THIS NOTE AND THE OTHER LOAN DOCUMENTS.*

**BORROWER HEREBY CERTIFIES, UNDER PENALTY OF PERJURY, THAT ONE HUNDRED PERCENT (100%) OF THE USE OF THE EQUIPMENT IS TO BE IN A TRADE OR BUSINESS OF BORROWER AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

***SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY***

**Borrower:**
**BBC Group CA, LLC**

Signature

SIVA CHAMANIAN OWNER

Printed Name and Title(s)

8/27/20

Date

**Co-Borrower [IF APPLICABLE]:**

Signature

Printed Name and Title(s)

Date

**Lender:**
**ISUZU FINANCE OF AMERICA, INC.**
(Not an indorsement)

By: (Duly Authorized)

**Lender's Name & Mailing Address:**
**ISUZU FINANCE OF AMERICA, INC.**
Address: 2500 Westchester Ave., Suite 312
Purchase, New York 10577
Attention: OPERATIONS

**Borrower(s) Name & Address:**
Legal Name(s): BBC Group CA, LLC
Street Address (Place of Business): 3815 Fairmeade Road, Pasadena, CA 91107
Mailing Address: 3815 Fairmeade Road, Pasadena, CA 91107
Telephone: [redacted] Fax:
County:
State of [Formation/Residence]: California
Organization Type: Limited Liability Company

## Delivery and Acceptance Certificate

On 8/27/20 (the "**Date of Acceptance**"), each item of Equipment listed in this Note was delivered to Borrower, in conjunction with Borrower's purchase of the Equipment, and Borrower acknowledges its receipt and irrevocable acceptance of each item of the Equipment. Borrower represents and warrants to Lender that Borrower has: accepted delivery of and inspected each item of Equipment; determined that each item of Equipment contains all of the major components and accessories as agreed; each item of Equipment is in good working order, repair, and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Borrower's requirements without exception. Borrower understands and acknowledges that Lender is entering into the Loan Documents based on Borrower's representation and warranty that Borrower will pay in full to Lender all payments when due as required by the Loan Documents. Borrower also represents and warrants to Lender that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Loan Documents has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made by Borrower in the Loan Documents are correct and complete as though made on and as of the date of this Note.

**Borrower's Initials:** **[Co-Borrower's Initials: ]**



ISUZU
FINANCE
Isuzu Finance
of America, Inc.

# Continuing Corporate Guaranty

**FOR GOOD AND VALUABLE CONSIDERATION,** the receipt and sufficiency of which are hereby acknowledged, and in order to induce **ISUZU FINANCE OF AMERICA, INC.** ("IFAI") to make loans and extend lease financing and other credit to **BBC Group CA, LLC** ("Primary Obligor"), with its principal place of business at 3815 Fairmeade Road , Pasadena, CA 91107 providing for the lease or financing from time to time of Equipment (as that term is defined below) the undersigned **BBC Group NV, LLC** ("Guarantor"), with Guarantor's principal place of business or legal residence at 3815 Fairmeade Road, Pasadena, CA 91107, hereby absolutely unconditionally and irrevocably guarantees to IFAI the full and prompt payment and performance by Primary Obligor of all Obligations (as that term is defined below), on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

1. **Definitions**: The following words shall have the following meanings in this Guaranty:
"Blocked Persons" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral by law.
"Equipment" means all of the "Equipment" as defined in any Primary Obligor Document.
"Guaranty" means this Corporate Guaranty made by Guarantor for the benefit of IFAI.
"Obligations" means the obligations of Primary Obligor under the Primary Obligor Documents, including, without limitation, the payment when due of all payments (including, without limitation, principal and interest due on any indebtedness and rental obligations arising under any lease) and all other sums currently or hereafter owing by Primary Obligor to IFAI thereunder, including costs, expenses and attorneys fees incurred by IFAI in connection therewith.
"Other Guarantor" means any other guarantor of the Obligations.
"Other Guarantees" means any guaranty by any Other Guarantor.
"Primary Obligor Documents" shall mean any note (or other instruments) made by Primary Obligor, or other agreement, lease, instrument or document evidencing obligations of Primary Obligor to IFAI incurred or assumed in connection with the purchase or lease of Equipment by Primary Obligor, any guaranty(ies) of any payment or performance of the Obligations (including, but not limited to, this Guaranty) and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to any Primary Obligor Document or any of the Obligations, as any or all of such documents may be executed or amended from time to time.

Capitalized terms not otherwise defined herein have the meaning given in the Primary Obligor Documents.

2. **Nature of Guaranty**. Guarantor's liability under this Guaranty shall be absolute, primary and direct. This Guaranty shall be a guarantee of payment and not a guarantee of collectability. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations. IFAI shall not be required to pursue any right or remedy it may have against Primary Obligor under the Primary Obligor Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against Primary Obligor) before enforcing this Guaranty against Guarantor. If any claim is made upon IFAI at any time for the repayment or recovery of any amount(s) or other value received by IFAI from any source(s) in payment of or on account of any of the Obligations guaranteed hereunder, and IFAI repays or otherwise becomes liable for all or any part of such claim, for whatever reason, Guarantor shall remain liable to IFAI hereunder as if such amount(s) had never been received by IFAI, notwithstanding any claim of satisfaction or termination hereof or the termination of the Primary Obligor Documents. **This is a continuing guaranty** applicable to Obligations arising under Primary Obligor Documents entered into from time to time on or after the date hereof (irrespective of the span of time passing between the execution of such Primary Obligor Documents, or between this Guaranty and the Primary Obligor Documents). IFAI may require more than one guaranty (whose form may vary) to be signed by Guarantor in connection with Obligations (past and future). In no event shall any preexisting or future guaranty be deemed to substitute for or to terminate this Guaranty, only to provide additional protection and assurance to IFAI and Obligor. IFAI's decision to require Guarantor to execute multiple guaranties shall in no event be deemed to constitute a course of dealing or course of conduct to be interpreted to IFAI's disadvantage. In no event shall the failure of IFAI to require the execution of a guaranty in connection with future Obligations be deemed to constitute a waiver of this Guaranty absent express written agreement from IFAI, or successful (prospective) termination of this Guaranty as provided herein. Guarantor may prospectively terminate this Guaranty by delivering written notice to IFAI, but may not terminate this Guaranty with respect to any existing Obligation, nor for any transaction for which a credit approval has been given to or for the benefit of the Primary Obligor (e.g., to an Equipment dealer) which approval remains outstanding.

3. **Guarantor's Representations and Warranties**. Guarantor has duly executed and delivered this Guaranty and warrants and represents to IFAI that (a) the execution, delivery and performance of this Guaranty will not result in a breach of, or constitute a default under, or result in the creation of any security interest, lien, charge or encumbrance upon any property or assets of Guarantor pursuant to any loan agreement, indenture or contract to which Guarantor is a party or by or under which Guarantor is bound; (b) this Guaranty is executed at Primary Obligor's request and not at the request of IFAI; (c) Primary Obligor is an affiliated entity of Guarantor and the proceeds of the loans to be made and lease financing credit to be extended by IFAI to Primary Obligor will result in a direct or indirect material economic benefit to Guarantor; (d) IFAI has made no representation to Guarantor as to the creditworthiness of Primary Obligor; (e) Guarantor has means to and shall keep adequately informed regarding Primary Obligor's financial condition and IFAI shall have no obligation to disclose to Guarantor any information regarding Primary Obligor; and (f) Guarantor shall not change its name or address without giving IFAI at least thirty (30) days' prior written thereof. Guarantor shall not become a Blocked Person or own or hold, directly or indirectly, any ownership interest in any Blocked Person.

4. **Guarantor Waivers**. 2. Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be

asserted by the Primary Obligor, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Primary Obligor Documents, this Guaranty or the transactions contemplated thereby or hereby. Guarantor agrees that this Guaranty shall be valid, enforceable and unconditionally binding upon Guarantor regardless of: (i) the reorganization, merger or consolidation of Primary Obligor into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the capital stock, business or assets of Primary Obligor to any other person or party; (ii) the death or dissolution of Primary Obligor, Guarantor or any Other Guarantor; (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Primary Obligor, Guarantor or any Other Guarantor; (iv) notice of the creation of new or additional Obligations or IFAI's approval of any indulgences or extensions of credit of whatever nature to Primary Obligor, Guarantor or any Other Guarantor; (v) the assertion by IFAI against Primary Obligor, Guarantor or any Other Guarantor of any of IFAI's rights and remedies provided for under the Primary Obligor Documents or existing in its favor in law, equity or bankruptcy; (vi) the release of Primary Obligor, Guarantor or any Other Guarantor from any Obligations under the Primary Obligor Documents, this Guaranty or any Other Guarantees by IFAI or by operation of law or otherwise; (vii) any invalidity, irregularity, defect or unenforceability of any provision of the Primary Obligor Documents, this Guaranty or any Other Guarantees; (viii) any defenses given to guarantors at law or in equity other than actual payment and performance of the Obligations; or (ix) the destruction, sale, modification or alteration of any item of the Equipment.

(b) Guarantor hereby waives notice of and consents to (i) the financing by Primary Obligor of the Equipment, and to any subleasing or other use of any item of the Equipment permitted by IFAI (regardless of who any such sublessee or user may be), (ii) all of the provisions of the Primary Obligor Documents, and any amendments, qualifications and extensions thereof, and any actions taken thereunder, and (iii) the execution by Primary Obligor of the foregoing documents and of any other agreements, documents and instruments executed by Primary Obligor in connection therewith. Guarantor further waives notice of IFAI's acceptance of this Guaranty, of any default and non-payment and/or non-performance by Primary Obligor under the Primary Obligor Documents, of presentment, protest and demand, and of all other matters to which Guarantor might otherwise be entitled. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, amendments, modification or extension of the term of the Primary Obligor Documents or of the terms and conditions of the Primary Obligor Documents. Guarantor hereby expressly waives all notice of and consents to any such renewal, modification or extension, and to the execution by Primary Obligor of any documents pertaining to any such renewal, modification or extension. **GUARANTOR CONFIRMS THAT THE FOREGOING WAIVER, AGREEMENT AND CONSENT ARE INFORMED AND VOLUNTARY.**

5.     **IFAI Waiver**. IFAI shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by IFAI. No delay or omission on the part of IFAI in exercising any right shall operate as a waiver of such right or any other right. Guarantor hereby agrees that the failure of IFAI to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of this Guaranty or the Primary Obligor Documents, or to exercise any of its rights thereunder or hereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect and shall be enforceable under this Guaranty. No delay or failure by IFAI to exercise any right or remedy against Primary Obligor or any Other Guarantor will be construed as a waiver of that right or remedy or as a waiver of any right or remedy against Guarantor. All remedies of IFAI against the Primary Obligor, Guarantor and the Other Guarantors are cumulative. Receipt by IFAI of any payments or other sums payable under the Primary Obligor Documents with knowledge that Primary Obligor has breached any of the terms, provisions or covenants of the Primary Obligor Documents shall not be deemed to be a waiver by IFAI of such breach, or a release or relinquishment of any claim for future performance under the Primary Obligor Documents or this Guaranty.

6.     **Subordination/Subrogation**. (a) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Primary Obligor or any other person or entity directly or contingently liable for the Obligations guaranteed hereunder, or against or with respect to the Primary Obligor's property (including, without limitation, property collateralizing the Primary Obligor Documents), arising from the existence or performance of this Guaranty.

(b) The liability of Guarantor under this Guaranty, and of any Other Guarantors, if any, under Other Guarantees given in favor of IFAI in connection with the Primary Obligor Documents, shall be joint and several and shall be irrevocable, unconditional and absolute, continuing in full force and effect according to its terms, until all of the Obligations hereby guaranteed have been fully satisfied. Guarantor covenants and agrees that any indebtedness of Primary Obligor to Guarantor is hereby subordinated to the obligations of Primary Obligor to IFAI, and that after any default under the Primary Obligor Documents or any of the other documents evidencing the transactions contemplated hereby, Guarantor shall hold any funds received from Primary Obligor in trust for IFAI to satisfy the obligations of Primary Obligor to IFAI and shall forthwith deliver such funds to IFAI in the form received. This subordination of the indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full.

7.     **Assignment**. This Guaranty is assignable by IFAI without notice to Guarantor and Guarantor consents thereto. Guarantor's obligations under this Guaranty may not be delegated to any other person or entity without the prior written consent of IFAI. Any assignee of IFAI shall have all of the rights of IFAI hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to such assignee in the first instance. This Guaranty shall inure to the benefit of IFAI, and its successors and assigns, and shall be binding upon Guarantor and Guarantor's heirs, administrators, successors and assigns.

8.     **Severability/Governing Law**. This Guaranty shall be effective when executed and delivered to IFAI. The Primary Obligor Documents and all related controversies shall be governed in all respects by, and construed in accordance with, the internal laws of the State of New York, without giving effect to New York choice of law principles. If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent that it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be construed liberally in favor of IFAI in order to effect the provisions hereof. Guarantor agrees to pay upon demand all of IFAI's costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against IFAI or the Guarantor concerning any matter arising out of or connected herewith, including without limitation any of the foregoing arising in, arising under or related to a case under the United States Bankruptcy Code.

9. **Authentication.** This Guaranty may take electronic form (i.e., be in "Electronic Format") if generated and stored within a secure electronic medium designed for creating and facilitating transactions entered into using so-called "electronic signatures". This Guaranty may also be in paper form bearing an original ink signature; it may also take the form of a photocopy of such a signed paper document; it may be delivered in pdf or other fixed-file format; it may be an electronic facsimile, or it may be in any other format deemed acceptable by IFAI (each such executed/authenticated paper version of this Guaranty shall constitute a "Counterpart"). Guarantor agrees that whether in Electronic Format or in Counterpart form, each such version hereof shall constitute a binding and effective original record hereof enforceable for all legal and equitable purposes including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Guarantor in accordance with its terms in any and all appropriate forums.

10. **Jury Trial Waiver**. GUARANTOR HEREBY WAIVES ALL GUARANTOR'S RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE PRIMARY OBLIGOR DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE A PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THE PRIMARY OBLIGOR DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY GUARANTOR WHO ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY OR THE PRIMARY OBLIGOR DOCUMENTS.

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the 26 day of August, 2020.

***SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY***

**Guarantor has read and understood the terms of this Continuing Guaranty which applies to all current and future loans or leases by and between Primary Obligor and Isuzu Finance of America.**

**BBC Group NV, LLC**

Signed: [signature]

Name: SIVA CHAMANAN

Title: OWNER

**WITNESS:**

Signed: [signature]

Print Name: Gabriel Costillo

# EXHIBIT 2

**Fill in this information to identify the case:**

Debtor 1 BBC Group CA, LLC

Debtor 2 (Spouse, if filing) ____________

United States Bankruptcy Court for the: District of Nevada

Case number 22-11539-mkn

Official Form 410

# Proof of Claim

**04/19**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

Tokyo Century (USA) Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ____________

2. **Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ____________

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Dressler Peters, LLC<br>Name | <br>Name |
| 70 W. Hubbard St., Ste. 200<br>Number Street | <br>Number Street |
| Chicago IL 60654<br>City State ZIP Code | <br>City State ZIP Code |
| Contact phone 312-602-7360 | Contact phone ____________ |
| Contact email ddressler@dresslerpeters.com | Contact email ____________ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ____________ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ____________

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ 58,159.38. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Secured Promissory Note

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe: 2020 Isuzu NQR

**Basis for perfection:** Certificate of Title

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 58,159.38

**Amount of the claim that is secured:** $ 58,159.38

**Amount of the claim that is unsecured:** $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $____________________

**Annual Interest Rate** (when case was filed)_______%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $____________________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________________________________________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $__________ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $__________ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $__________ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $__________ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $__________ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $__________ |

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 07/26/2022 (MM / DD / YYYY)

/s/ Dennis A. Dressler
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Dennis A. Dressler (First name / Middle name / Last name)

Title: Attorney

Company: Dressler Peters, LLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 70 W. Hubbard St., Ste. 200 (Number / Street)
Chicago (City) IL (State) 60654 (ZIP Code)

Contact phone: 312-602-7360 Email: ddressler@dresslerpeters.com

## PURCHASE OF LOAN CONTRACT

This Purchase Of Loan Contract (this "Purchase Contract") is executed pursuant to the Master Loan and Sale and Assignment Agreement dated as of May 16, 2007 (the "Agreement"), by and between ISUZU FINANCE OF AMERICA, INC., as Assignor, and TOKYO CENTURY (USA) INC., as Assignee.

This Purchase Contract is dated, and the assignment described below is effective, as of the date set forth below and hereby expressly incorporates the terms and conditions of the Agreement.

| | |
|---|---|
| 1. Dealer | Thorson GMC Truck - Buick Motor Co. |
| 2. Obligor (Borrower) | BBC Group CA, LLC |
| 3. Guarantor | Chamanian, Silva |
| 4. Date of (Loan) Contract | 8/26/2020 |
| 5. Contract Documents (See Schedule A) | |
| 6. Total Invoice Cost (Amount Financed) | $73,415.70 |
| 7. Payments to be due under Purchase Contract | |
| (a) Term | 72 |
| (b) Amount of each payment | $1,307.02 |
| (c) Balloon Payment | $1,307.02 |
| 8. Consideration (6) | $73,415.70 |
| 9. Acquisition Fee to Assignee (TCUSA) | $250.00 |
| 10. Referral Fee | $700.00 |
| 11. Dealer Markup | $3,586.46 |
| 12. Purchase Amount (8-9+10+11) | $77,452.16 |

Date of Execution: September 1, 2020

ASSIGNOR: ISUZU FINANCE OF AMERICA, INC.

By: [signature]
Name: Martin Carr
Title: Vice President

ASSIGNEE: TOKYO CENTURY (USA) INC.

By: [signature]
Name: ADAM R RAMIREZ
Title: Executive Vice President

LN134245

# Isuzu Finance of America, Inc.

## Secured Promissory Note

**Borrower:** BBC Group CA, LLC
Address: 3815 Fairmeade Road
Pasadena, CA 91107

**Lender/Creditor:** ISUZU FINANCE OF AMERICA, INC.
Address: 2500 Westchester Ave., Suite 312
Purchase, New York 10577
Attention: Operations

Date: 08/26/2020

| Year | Make | Model | Vehicle Identification Number | License Number (if applicable) | | Use For Which Purchased |
|---|---|---|---|---|---|---|
| 2020 | Isuzu | NQR | JALE5W163L7902052 | | ☒ NEW ☐ Demonstrator ☐ Other | ☒BUSINESS OR COMMERCIAL |

**Description of Vehicle's Body/Attachments:** 16' Morgan Insulated Van Body with Thermo King V-520-20 Refrigeration Unit
**Vehicle Body/Attachments Serial Numbers:** Body: MSC20A2771001 Refrigeration Unit: HTG1239191
**Gross Vehicle Weight:** 17950
**Address where Vehicle will be located:**
Street Address: 3815 Fairmeade Road
City/State/Zip: Pasadena, CA 91107

**Interest Rate:** 8.55 % per annum.

| | | |
|---|---|---|
| 1. Vehicle Cash Sales Price | | $79,645.00 |
| 2. Net Trade-in Less Liens | | $0.00 |
| 3. Cash Down Payment | | $15,800.00 |
| 4. Net Vehicle Cash Sales Price (1-2-3) | $63,845.00 | |
| 5. Other Taxable Charges (Explain) | $0.00 | |
| 6. Sales Tax | $8,085.20 | |
| 7. Registration/Title Fees | $1,140.00 | |
| 8. Other Charges | | |
| Acquisition Fee | $250.00 | |
| Documentation Fee | $85.00 | |
| California Tire Fee | $10.50 | |
| 9. Total Itemized Charges (5 through 8) | | $9,570.70 |
| 10. Amount Financed (4 + 9) | | $73,415.70 |
| 11. Finance Charge | | $20,689.74 |
| 12. Other (Explain) | | |
| 13. Total Obligation (10+11+12) | | $94,105.44 |

Borrower agrees to pay the "Total Obligation" (Item 13) in accordance with the following schedule (and any additional page(s) of schedule attached):

| No. of Installments | First Payment Date | Payment Amount | Total |
|---|---|---|---|
| 72 | | $1,307.02 | $94,105.44 |

If shown below, Borrower has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Borrower agrees that Lender collects such fees and charges for the service provider only as an accommodation to Borrower and such agreements are not part of this Contract. The Lender is not responsible for any services, disposables or insurance obligations.

| Service | Term (mos.) | Total Charge |
|---|---|---|
| Extended Warranty | 60/200,000 | $850.00 |
| | | |
| **Total Charge Is Included In "Vehicle Cash Sales Price"** | | |

1. **Promise to Pay and Interest.** The below-signed borrower, and if more than one, each below-signed borrower, jointly and severally (the **"Borrower"**), promises to pay in full the Total Obligation set forth in Item 13 above to Isuzu Finance of America, Inc. (**"Lender"**) in lawful money of the United States of America, with interest thereon as herein provided, to be paid in the manner set forth herein. All interest due under the Loan Documents (as defined below) shall be computed on the basis of a 360-day year and accrue on a daily basis for the actual number of days elapsed. Borrower agrees to pay an effective rate of interest that is the Interest Rate set forth on page 1 (the **"Interest Rate"**). Borrower shall also be liable for and shall pay when due any other charges or fees paid or to be paid in connection with the Loan Documents. In addition to the Total Obligation, Borrower agrees to pay all other amounts owed to Lender under this Note and the other Loan Documents (collectively with the Total Obligation, the **"Indebtedness"**) when due. Payment of the Indebtedness shall be made to Lender at such place as Lender or its successor may designate from time to time in writing. Lender reserves the right to require payment on this Secured Promissory Note to be made by wired federal funds or other immediately available funds. **"Loan Documents"** shall mean this Secured Promissory Note (this **"Note"**); all other notes (or other instruments) made by, or other obligations of, Borrower to Lender; any guaranty(ies) of any payment or performance of the Indebtedness; and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to this Note or the credit evidenced hereby, as any or all of such documents may be executed or amended from time to time.

2. **Security Interest**. In order to secure payment of the Indebtedness and complete and full performance of any Loan Party's obligations to Lender under the Loan Documents, now existing or at any time entered into (the **"Secured Obligations"**), Borrower hereby grants to Lender a security interest in and to the Vehicle and such other equipment and goods as are described above (collectively, the **"Equipment"**), together with all present and future attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory loans, warranties, service contracts, documents, and records now or hereafter arising from the Equipment (collectively, the **"Collateral"**). Borrower authorizes Lender to file a financing statement, or a photocopy or other reproduction of this Note, or of any financing statement, to perfect its security interest. Principal shall bear interest at the Interest Rate from the date of disbursement until the applicable due date, whether due by acceleration or otherwise. Any payment due on a date which is a date when banking institutions are not open to the public under the laws of the State of New York shall be due on the next succeeding date on which such institutions are open. All Indebtedness not paid when due shall bear interest from the due date, until paid at a rate (the **"Default Rate"**) which is the lesser of sixteen percent (16%) per annum or the maximum rate permitted under applicable law. Borrower is responsible for assuring that a lien on the Collateral in favor of the Lender is properly recorded on any title to the Collateral and that such lien remains in full force and effect until all amounts due Lender hereunder shall have been paid in full.

LN134245

3. **Receipt and Application of Payments**. Payments shall not be deemed received by Lender until good funds are actually received by Lender. Payments in respect of the Secured Obligations and any proceeds of the Collateral when received by Lender in cash or its equivalent, will be applied in reduction of the Secured Obligations in such order and manner as Lender may direct in its sole discretion, and Borrower irrevocably waives the right to direct the application of such payments and proceeds and acknowledges and agrees that Lender shall have the continuing and exclusive right to apply any and all such payments and proceeds in the Lender's sole discretion, notwithstanding any entry to the contrary upon any of its books and records.

4. **Prepayment**. So long as no Default or Event of Default shall have occurred and be continuing and Borrower shall have given Lender at least fourteen (14) days prior written notice, Borrower shall have the option to prepay this Note on any installment Due Date set forth on page 1 of this Note (or any accompanying schedule referred to on page 1 of this note) (each, an **"Installment Due Date"**) for an amount (the "Prepayment Amount") equal to (1) any unpaid Payment Amounts and all other amounts due on or before such Installment Due Date, plus (2) the principal outstanding on the books and records of the Lender on such Installment Due Date, plus (3) any applicable sales taxes. Payment of the Prepayment Amount, together with all other amounts due and owing by Borrower under the Note (including, without limitation, the scheduled Payment Amount) on or before the Installment Due Date, shall be made on the Installment Due Date in immediately available funds. If Borrower shall fail to pay all amounts required to be paid under the Note on the Installment Due Date, the Note shall continue in full force and effect and Borrower agrees to reimburse Lender for all reasonable attorney's fees, costs, expenses and liabilities incurred in connection therewith.

5. **Late Charges**. If any payment of principal and interest or any other Indebtedness is not received in full by Lender within ten (10) days after its due date, then in addition to all other rights and remedies of Lender, a late charge equal to ten percent (10%) of the amount due and unpaid will be charged to Borrower or such lesser amount as shall be the maximum permissible late charge thereon. Such late charge shall be immediately due and payable upon receipt of written notice from Lender and constitute **"Indebtedness"** and a **"Secured Obligation"** under this Note.

6. **No Counterclaims, Deductions, or Offsets**. All payments and obligations of Borrower under the Loan Documents will be made and performed without counterclaim, deduction, defense, deferment, set-off, or reduction.

7. **Insurance and Risk of Loss**. All risk of loss, damage or destruction of the Equipment will at all times be on Borrower. Borrower will keep the Equipment insured at Borrower's expense against liability in an amount as required by Lender or, if in excess thereof, the amount required under applicable law, and loss or damage by fire, theft and other customary risks for the greater of the Equipment's full insurable value or the Indebtedness, with a deductible not to exceed $2,500 per item of Equipment, or such lesser amount as shall be required by applicable law. Coverage and insurer will be subject to Lender's reasonable approval. Each policy shall name Lender as loss payee and will further provide that Lender's interest can not be invalidated by any act, omissions or neglect of any party other than Lender and that the insurer will give Lender thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Borrower or insurer. Borrower will promptly deliver a copy of each policy or an insurance certificate acceptable to Lender prior to any advancement of funds hereunder, and will later provide proof of renewal at least 30 days prior to expiration or cancellation. If Borrower fails to so insure the Equipment, Lender may purchase such insurance at Borrower's expense, the purchase of which need not include liability or protection of Borrower's interest. Borrower hereby authorizes and irrevocably appoints Lender as Borrower's attorney-in-fact, coupled with an interest, with full power of substitution, to execute and endorse all documents, checks, or drafts in Borrower's name and to submit any proof of loss to collect such insurance.

8. **Borrower's Representations, Warranties, and Agreements**. Borrower represents, warrants, and agrees that: (a) this Note evidences a loan obtained by it, and the Equipment is to be used by it, solely for business or commercial purposes; (b) prior to signing this Note, Borrower read and understood the provisions hereof, and agrees to all the terms and conditions contained herein; (c) except for the security interest granted to Lender, the Collateral will remain free from all liens and security interests; (d) all information supplied by Borrower in any financial, credit, or accounting statement to Lender is and will be true, correct and genuine, and Borrower consents to the Lender's prior review of Borrower's credit reports prior to the date of this Note and to the ongoing review of Borrower's credit reports during the term of the credit evidenced by this Note; (e) Borrower has full authority to borrow the credit evidenced by this Note for the purposes provided for herein and to enter into each Loan Document to which it is a party, and in so doing it is not violating any law, regulation or agreement; and (f) Borrower has duly executed and delivered this Note and has taken all necessary and appropriate actions to make each Loan Document to which it is a party binding and enforceable against Borrower in accordance with its terms. Borrower covenants and agrees that: (i) it shall not allow a Blocked Person to have an ownership interest in or control of Borrower, (ii) it shall defend at its own cost any action, proceeding or claim affecting the Collateral; (iii) it shall maintain each item of the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and any warranties; (iv) it shall promptly pay all taxes, assessment, license fees and other public or private charges when levied against the Collateral or any Loan Document; (v) it shall obtain a certificate of title on each item of Equipment showing Lender's first priority security interest and preserve and perfect Lender's security interest, such that such security interest shall at all times be a first priority perfected security interest subject to no other liens or encumbrances by authorizing Lender to file financing statements covering the Collateral and also execute any required financing statements; (vi) it shall not misuse, secrete, sell, rent, encumber or transfer any item of Equipment; (vii) that Lender may enter any premises at any reasonable time to inspect the Equipment; (viii) it shall provide Lender with quarterly and annual financial statements upon request of Lender; and (ix) it shall reimburse Lender immediately after written notice for any expenses incurred by Lender in enforcing Borrower's obligations under any Loan Document. [As used herein, the term "Blocked Person" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) a person or entity whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law.]

9. **Events of Default**: Each of the following shall be an event of default under this Note and the other Loan Documents (an **"Event of Default"**): (a) failure by the Borrower, or any other person (each, a **"Loan Party"**; and collectively with the Borrower, the **"Loan Parties"**) that from time to time is obligated to Lender under any of the Loan Documents, to pay when due (i) any amount due by such Loan Party under any of the Loan Documents, or (ii) any other amount due by a Loan Party to Lender under any other agreement or contract or indebtedness of any kind; (b) failure by any Loan Party to perform any obligation not involving the payment of money, or to comply with any other term or condition applicable to such Loan Party, in any of the Loan Documents and such obligation or term or condition remains unsatisfied after ten (10) days' written notice to such Loan Party; (c) the breach of any covenant, or any representation or warranty made by any Loan Party in any of the Loan Documents or otherwise or any information delivered by any Loan Party to Lender in obtaining or hereafter in connection with the credit evidenced by this Note is materially incomplete, incorrect, or misleading as of the date made or delivered; (d) any Loan Party (i) is unable or admits in writing its inability to pay its monetary obligations as they become due, (ii) makes a general assignment for the benefit of creditors or (iii) applies for or acquiesces in the appointment of a trustee, receiver, or other custodian for such Loan Party or any of the property of such Loan Party or a trustee, receiver or other custodian is appointed for such Loan Party or any of the property of such Loan Party; (e) commencement of any insolvency or bankruptcy proceeding, or any similar proceeding under any federal, state, local, or foreign law by or against any Loan Party; (f) the death, incompetence, dissolution, or liquidation of any Loan Party; the consolidation or merger of any Loan Party with any other person or entity; or the taking of any action by any Loan Party toward a dissolution, liquidation, consolidation, or merger; (g) any Loan Party or any other person on behalf of any Loan Party claims that any Loan Document or any lien or security interest in any of the Collateral is not legal, valid, binding, or enforceable against any Loan Party, or that that the priority of any lien or security interest securing any of the Secured Obligations is different than the priority represented and warranted in the Loan Documents; (h) any of the Collateral is lost or destroyed; (i) Lender in good faith believes that the prospect of payment or performance hereunder is impaired; (j) there shall be a material change in the management, ownership or control of any Loan Party; (k) if there shall occur an (i) appropriation, (ii) confiscation, (iii) retention, or (iv) seizure of control, custody or possession of any Collateral by governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder collectively be referred to as **"Governmental Authority"**); (l) if anyone in the control, custody or possession of any Collateral or any Loan Party is accused, alleged or charged

(whether or not subsequently arraigned, indicted or convicted) by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); or (m) the occurrence of any condition or event that is a default or is designated as a default or event of default or an **"Event of Default"** under any other Loan Document or in any other agreement, contract, or indebtedness of any Loan Party to Lender.

10. **Rights and Remedies of Lender**. Upon the occurrence of an Event of Default, Lender may, at its option, and without demand or notice: (a) declare the Indebtedness to be immediately due and payable, whereupon all of the Indebtedness shall be immediately due and payable; (b) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Borrower; (c) require Borrower to make the Collateral available to Lender at a place to be designated by Lender; (d) at the expense of Borrower, make repairs to any item of Equipment deemed necessary by Lender; and (e) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s). The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses) shall be applied to the Indebtedness or any other indebtedness of Borrower to Lender and any surplus remaining thereafter shall be paid to Borrower or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Lender may purchase any or all of the Collateral and/or accept a trade of property for all or any portion of the purchase price. All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Lender and its successors and assigns. No liability shall be asserted or enforced against Lender under this section except for Lender's intentional wrongful acts. Lender may in its sole discretion waive an Event of Default or allow a cure of an Event of Default. Any waiver will not constitute a waiver of any other Event of Default. Delay, discontinuance, or failure to exercise any remedy shall not be a waiver of such remedy or of any other right or remedy of Lender, or of the TIME IS OF THE ESSENCE provision. To the extent permitted under applicable law, Borrower expressly consents to and authorizes a court with jurisdiction to issue, by hearing without notice, such orders as may be necessary to enforce the terms of this Note, granting to Lender such powers as Lender shall need to enforce this Note. Any such court is directed to not require a bond of Lender, the parties agreeing that time is of the essence to protect Lender. To the extent permitted under applicable law, Borrower expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Lender existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, any notice given to Borrower at the address set forth on page 1 of this Note (or to such other address as provided in writing by Borrower) by registered or certified mail at least five (5) days before the date of sale shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Borrower.

11. **Transfer or Assignment**. Lender may at any time transfer its rights and/or delegate its obligations under the Loan Documents or otherwise negotiate this Note in whole or in part, without any notice to or the consent of any Loan Party. The rights and obligations of Borrower may not be assigned or delegated.

12. **Binding Effect**. This Note shall be binding upon Borrower and inure to the benefit of Lender and its successors and assigns. In addition and as permitted under applicable law, NO LOAN PARTY SHALL ASSERT AGAINST ANY ASSIGNEE OR TRANSFEREE OF LENDER ANY CLAIMS OR DEFENSES SUCH LOAN PARTY MAY HAVE AGAINST LENDER.

13. **Collection Costs and Other Costs, Expenses and Fees.** In addition to the principal, interest, and late payment charges (if any), Borrower shall pay Lender on demand, and Lender shall be entitled to collect all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection with enforcement of its rights and remedies hereunder and under the other Loan Documents, the protection or realization of the Collateral or in connection with Lender's collection efforts, or in connection with any bankruptcy or other judicial proceeding, whether or not suit on this Note or any foreclosure proceeding is filed. If this Note is terminated for any reason prior to the expiration of the original Term, then Borrower shall pay to Lender $300.00 on demand for processing the early termination. All such costs, expenses, and fees shall constitute **"Indebtedness"** and **"Secured Obligations"** and shall be payable on demand.

14. **Usury; Partial Invalidity**. At no time shall the interest rate (or the Default Rate or other amounts paid or collected hereunder) exceed the highest rate allowed by applicable law for the type of loan evidenced hereby. Should Lender ever collect interest at a rate that exceeds such applicable legal limit, such excess will be credited to the outstanding principal balance of the loan evidenced hereby.

15. **Severability**. If any provision of any of the Loan Documents is unenforceable, such provision shall be modified to the minimum extent possible to make such provision enforceable, and the enforceability of the other provisions of the Loan Documents shall not be affected.

16. **Choice of Law**. The Loan Documents (including all matters of construction, validity, performance and the creation, validity, enforcement or priority of the lien of, and security interests created by, this Note in or upon the Collateral) and all related controversies shall be governed in all respects by, and construed in accordance with, the laws of the State of New York, without reference to conflicts of law (other than Section 5-1401 of the New York General Obligations Law), except as required by mandatory provisions of law and except to the extent that the validity or perfection of the lien and security interest hereunder, or remedies hereunder, in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York.

17. **Notices and Demands**. All demands or notices under the Loan Documents shall be in writing (including, without limitation, telecopy or facsimile - receipt confirmed) and mailed, telecopied, or delivered to the address specified on page 1 of this Note or in writing by the party to which such notice is given. Any demand or notice mailed shall be mailed first-class mail, post-prepaid, return-receipt requested. Demands or notices shall be effective upon the earlier of (i) actual receipt by the addressee, or (ii) the date shown on the return receipt, fax confirmation, or delivery receipt.

18. **Rescission or Return of Payments**. If at any time or from time to time, whether before or after payment and performance of the Indebtedness in full, all or any part of any amount received by the Lender as payment of any Indebtedness, must or is claimed to be subject to avoidance, rescission, or return to Borrower or any other party for any reason whatsoever, such Indebtedness and any liens, security interests, and other encumbrances that secured such Indebtedness at the time such avoidance, rescission, or returned payment was received by Lender shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received.

19. **Waivers**. Borrower hereby (a) waives, to the fullest extent permitted under applicable law, the right to assert any statutes of limitations as a defense to any of the Indebtedness, (b) waives, to the fullest extent permitted under applicable law, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents), and (c) agrees that Lender may enforce this Note and any other Loan Document against Borrower without first having sought enforcement against any other Loan Party or any Collateral securing the Indebtedness.

BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, ITS RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH LENDER, BORROWER OR ANY LOAN PARTY MAY BE PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY, AND BORROWER ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS NOTE AND THE OTHER LOAN DOCUMENTS.

LN134245

20. **Power of Attorney**. Borrower grants Lender a power of attorney to correct obvious errors and fill in such blanks as serial numbers, date of first payment and similar provisions, for registering, transferring, titling, or perfecting Lender's interest in the Equipment and for obtaining repossession certificates of title with respect to the Equipment. Such power of attorney is coupled with an interest, is delegable to an agent, and is irrevocable during the term of the credit evidenced by this Note. **Borrower agrees that a photocopy of this Note shall be sufficient evidence on which any third party may rely for evidence of Lender's authority to act pursuant to this and any other power of attorney granted hereby.**

21. **Miscellaneous**. The Loan Documents constitute the entire agreement and understanding of Lender and Borrower and supersede all prior agreements. No provision of any Loan Document can be amended, waived, discharged, or terminated except in writing executed by the parties thereto. Acceptance of late payments shall not waive the TIME IS OF THE ESSENCE PROVISION, the right of Lender to require that subsequent payments be made when due, or the right of Lender to declare an Event of Default if subsequent payments are not made when due. Any approval, consent, or statement that a matter is acceptable to Lender under the Loan Documents must be in writing executed by Lender and shall be construed to apply only to the party and facts specifically set forth in writing. This Note may be authenticated in one or more counterparts each of which when authenticated shall be deemed an original but all of which together shall constitute one and the same instrument. This Note may: (i) take electronic form (constituting an "Electronic Document") pursuant to the Electronic Signatures in Global and National Commerce Act, the Uniform Electronic Transactions Act and/or other applicable law, if generated and stored within a secure electronic medium approved by Lender designed for creating and facilitating transactions entered into using so-called "electronic signatures", (ii) take paper form bearing an ink signature, (iii) take the form of a photocopy of such a paper form, (iv) be delivered in PDF or other fixed-file format, (v) be an electronic facsimile, or (vi) be in any other format deemed acceptable by Lender. Each version of this Note originally authenticated in paper form shall constitute a "Counterpart", and must constitute a true, complete, faithful and legible representation hereof. Borrower agrees that all signatures transmitted by facsimile, email or other electronic means, including, but not limited to, Electronic Documents and Counterpart(s) (as applicable) shall be deemed binding and effective for all legal and equitable purposes including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Borrower in accordance with its terms in any and all appropriate forums. Lender may choose to authenticate a Counterpart(s) in writing, through the use of a stamp, or through some other means selected by Lender. (In no event shall any acceptance or acknowledgment be deemed to constitute an indorsement hereof without express use of words to that effect.) **Notwithstanding anything contained herein to the contrary, the version of this Note bearing Lender's original signature, or, if the Note is fully executed electronically, the authoritative copy as defined by the Uniform Commercial Code, shall constitute the sole record of "chattel-paper" for Code purposes. Perfection by possession (control) of same may only be accomplished by: (i) maintaining possession and control of the Counterpart of this Note authenticated by a duly authorized representative of Lender and not otherwise marked "customer copy" (or words to that effect) or (ii) maintaining, as provided in Article 9 of the Uniform Commercial Code, control of the single authoritative copy of this Note, if in the form of an Electronic Document.** _TIME IS OF THE ESSENCE IN THIS NOTE AND THE OTHER LOAN DOCUMENTS._

**BORROWER HEREBY CERTIFIES, UNDER PENALTY OF PERJURY, THAT ONE HUNDRED PERCENT (100%) OF THE USE OF THE EQUIPMENT IS TO BE IN A TRADE OR BUSINESS OF BORROWER AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

***SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY***

**Borrower:**
**BBC Group CA, LLC**

Signature

SILVA CHAMANIAN OWNER
Printed Name and Title(s)

8/27/20
Date

**Co-Borrower [IF APPLICABLE]:**

Signature

Printed Name and Title(s)

Date

**Lender:**
**ISUZU FINANCE OF AMERICA, INC.**
(Not an indorsement)

By: (Duly Authorized)

**Lender's Name & Mailing Address:**
**ISUZU FINANCE OF AMERICA, INC.**
Address: 2500 Westchester Ave., Suite 312
Purchase, New York 10577
Attention: OPERATIONS

**Borrower(s) Name & Address:**
Legal Name(s): BBC Group CA, LLC
County:
Street Address (Place of Business): 3815 Fairmeade Road, Pasadena, CA 91107
Mailing Address: 3815 Fairmeade Road, Pasadena, CA 91107
State of [Formation/Residence]: California
Telephone: [redacted] Fax:
Organization Type: Limited Liability Company

## Delivery and Acceptance Certificate

On 8/27/20 (the "**Date of Acceptance**"), each item of Equipment listed in this Note was delivered to Borrower, in conjunction with Borrower's purchase of the Equipment, and Borrower acknowledges its receipt and irrevocable acceptance of each item of the Equipment. Borrower represents and warrants to Lender that Borrower has: accepted delivery of and inspected each item of Equipment; determined that each item of Equipment contains all of the major components and accessories as agreed; each item of Equipment is in good working order, repair, and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Borrower's requirements without exception. Borrower understands and acknowledges that Lender is entering into the Loan Documents based on Borrower's representation and warranty that Borrower will pay in full to Lender all payments when due as required by the Loan Documents. Borrower also represents and warrants to Lender that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under the Loan Documents has occurred and is continuing as of the Date of Acceptance and that all of the representations and warranties made by Borrower in the Loan Documents are correct and complete as though made on and as of the date of this Note.

**Borrower's Initials:** **[Co-Borrower's Initials: ]**



ISUZU
FINANCE
Isuzu Finance
of America, Inc.

# Continuing Corporate Guaranty

**FOR GOOD AND VALUABLE CONSIDERATION,** the receipt and sufficiency of which are hereby acknowledged, and in order to induce **ISUZU FINANCE OF AMERICA, INC.** ("IFAI") to make loans and extend lease financing and other credit to **BBC Group CA, LLC** ("Primary Obligor"), with its principal place of business at 3815 Fairmeade Road , Pasadena, CA 91107 providing for the lease or financing from time to time of Equipment (as that term is defined below) the undersigned **BBC Group NV, LLC** ("Guarantor"), with Guarantor's principal place of business or legal residence at 3815 Fairmeade Road, Pasadena, CA 91107, hereby absolutely unconditionally and irrevocably guarantees to IFAI the full and prompt payment and performance by Primary Obligor of all Obligations (as that term is defined below), on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

1. **Definitions**: The following words shall have the following meanings in this Guaranty:
"Blocked Persons" means any person or entity that is now or at any time: (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral by law.
"Equipment" means all of the "Equipment" as defined in any Primary Obligor Document.
"Guaranty" means this Corporate Guaranty made by Guarantor for the benefit of IFAI.
"Obligations" means the obligations of Primary Obligor under the Primary Obligor Documents, including, without limitation, the payment when due of all payments (including, without limitation, principal and interest due on any indebtedness and rental obligations arising under any lease) and all other sums currently or hereafter owing by Primary Obligor to IFAI thereunder, including costs, expenses and attorneys fees incurred by IFAI in connection therewith.
"Other Guarantor" means any other guarantor of the Obligations.
"Other Guarantees" means any guaranty by any Other Guarantor.
"Primary Obligor Documents" shall mean any note (or other instruments) made by Primary Obligor, or other agreement, lease, instrument or document evidencing obligations of Primary Obligor to IFAI incurred or assumed in connection with the purchase or lease of Equipment by Primary Obligor, any guaranty(ies) of any payment or performance of the Obligations (including, but not limited to, this Guaranty) and all other agreements or documents evidencing, guaranteeing, securing, or otherwise relating to any Primary Obligor Document or any of the Obligations, as any or all of such documents may be executed or amended from time to time.

Capitalized terms not otherwise defined herein have the meaning given in the Primary Obligor Documents.

2. **Nature of Guaranty**. Guarantor's liability under this Guaranty shall be absolute, primary and direct. This Guaranty shall be a guarantee of payment and not a guarantee of collectability. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations. IFAI shall not be required to pursue any right or remedy it may have against Primary Obligor under the Primary Obligor Documents or otherwise (and shall not be required first to commence any action or obtain any judgment against Primary Obligor) before enforcing this Guaranty against Guarantor. If any claim is made upon IFAI at any time for the repayment or recovery of any amount(s) or other value received by IFAI from any source(s) in payment of or on account of any of the Obligations guaranteed hereunder, and IFAI repays or otherwise becomes liable for all or any part of such claim, for whatever reason, Guarantor shall remain liable to IFAI hereunder as if such amount(s) had never been received by IFAI, notwithstanding any claim of satisfaction or termination hereof or the termination of the Primary Obligor Documents. **This is a continuing guaranty** applicable to Obligations arising under Primary Obligor Documents entered into from time to time on or after the date hereof (irrespective of the span of time passing between the execution of such Primary Obligor Documents, or between this Guaranty and the Primary Obligor Documents). IFAI may require more than one guaranty (whose form may vary) to be signed by Guarantor in connection with Obligations (past and future). In no event shall any preexisting or future guaranty be deemed to substitute for or to terminate this Guaranty, only to provide additional protection and assurance to IFAI and Obligor. IFAI's decision to require Guarantor to execute multiple guaranties shall in no event be deemed to constitute a course of dealing or course of conduct to be interpreted to IFAI's disadvantage. In no event shall the failure of IFAI to require the execution of a guaranty in connection with future Obligations be deemed to constitute a waiver of this Guaranty absent express written agreement from IFAI, or successful (prospective) termination of this Guaranty as provided herein. Guarantor may prospectively terminate this Guaranty by delivering written notice to IFAI, but may not terminate this Guaranty with respect to any existing Obligation, nor for any transaction for which a credit approval has been given to or for the benefit of the Primary Obligor (e.g., to an Equipment dealer) which approval remains outstanding.

3. **Guarantor's Representations and Warranties**. Guarantor has duly executed and delivered this Guaranty and warrants and represents to IFAI that (a) the execution, delivery and performance of this Guaranty will not result in a breach of, or constitute a default under, or result in the creation of any security interest, lien, charge or encumbrance upon any property or assets of Guarantor pursuant to any loan agreement, indenture or contract to which Guarantor is a party or by or under which Guarantor is bound; (b) this Guaranty is executed at Primary Obligor's request and not at the request of IFAI; (c) Primary Obligor is an affiliated entity of Guarantor and the proceeds of the loans to be made and lease financing credit to be extended by IFAI to Primary Obligor will result in a direct or indirect material economic benefit to Guarantor; (d) IFAI has made no representation to Guarantor as to the creditworthiness of Primary Obligor; (e) Guarantor has means to and shall keep adequately informed regarding Primary Obligor's financial condition and IFAI shall have no obligation to disclose to Guarantor any information regarding Primary Obligor; and (f) Guarantor shall not change its name or address without giving IFAI at least thirty (30) days' prior written thereof. Guarantor shall not become a Blocked Person or own or hold, directly or indirectly, any ownership interest in any Blocked Person.

4. **Guarantor Waivers**. 2. Guarantor expressly waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be

asserted by the Primary Obligor, the Guarantor or both, in any action or proceeding, in any court, arising on, out of, under, by virtue of, or in any way relating to the Primary Obligor Documents, this Guaranty or the transactions contemplated thereby or hereby. Guarantor agrees that this Guaranty shall be valid, enforceable and unconditionally binding upon Guarantor regardless of: (i) the reorganization, merger or consolidation of Primary Obligor into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the capital stock, business or assets of Primary Obligor to any other person or party; (ii) the death or dissolution of Primary Obligor, Guarantor or any Other Guarantor; (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Primary Obligor, Guarantor or any Other Guarantor; (iv) notice of the creation of new or additional Obligations or IFAI's approval of any indulgences or extensions of credit of whatever nature to Primary Obligor, Guarantor or any Other Guarantor; (v) the assertion by IFAI against Primary Obligor, Guarantor or any Other Guarantor of any of IFAI's rights and remedies provided for under the Primary Obligor Documents or existing in its favor in law, equity or bankruptcy; (vi) the release of Primary Obligor, Guarantor or any Other Guarantor from any Obligations under the Primary Obligor Documents, this Guaranty or any Other Guarantees by IFAI or by operation of law or otherwise; (vii) any invalidity, irregularity, defect or unenforceability of any provision of the Primary Obligor Documents, this Guaranty or any Other Guarantees; (viii) any defenses given to guarantors at law or in equity other than actual payment and performance of the Obligations; or (ix) the destruction, sale, modification or alteration of any item of the Equipment.

(b) Guarantor hereby waives notice of and consents to (i) the financing by Primary Obligor of the Equipment, and to any subleasing or other use of any item of the Equipment permitted by IFAI (regardless of who any such sublessee or user may be), (ii) all of the provisions of the Primary Obligor Documents, and any amendments, qualifications and extensions thereof, and any actions taken thereunder, and (iii) the execution by Primary Obligor of the foregoing documents and of any other agreements, documents and instruments executed by Primary Obligor in connection therewith. Guarantor further waives notice of IFAI's acceptance of this Guaranty, of any default and non-payment and/or non-performance by Primary Obligor under the Primary Obligor Documents, of presentment, protest and demand, and of all other matters to which Guarantor might otherwise be entitled. Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, amendments, modification or extension of the term of the Primary Obligor Documents or of the terms and conditions of the Primary Obligor Documents. Guarantor hereby expressly waives all notice of and consents to any such renewal, modification or extension, and to the execution by Primary Obligor of any documents pertaining to any such renewal, modification or extension. **GUARANTOR CONFIRMS THAT THE FOREGOING WAIVER, AGREEMENT AND CONSENT ARE INFORMED AND VOLUNTARY.**

5. **IFAI Waiver**. IFAI shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by IFAI. No delay or omission on the part of IFAI in exercising any right shall operate as a waiver of such right or any other right. Guarantor hereby agrees that the failure of IFAI to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of this Guaranty or the Primary Obligor Documents, or to exercise any of its rights thereunder or hereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect and shall be enforceable under this Guaranty. No delay or failure by IFAI to exercise any right or remedy against Primary Obligor or any Other Guarantor will be construed as a waiver of that right or remedy or as a waiver of any right or remedy against Guarantor. All remedies of IFAI against the Primary Obligor, Guarantor and the Other Guarantors are cumulative. Receipt by IFAI of any payments or other sums payable under the Primary Obligor Documents with knowledge that Primary Obligor has breached any of the terms, provisions or covenants of the Primary Obligor Documents shall not be deemed to be a waiver by IFAI of such breach, or a release or relinquishment of any claim for future performance under the Primary Obligor Documents or this Guaranty.

6. **Subordination/Subrogation**. (a) Guarantor specifically waives any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against the Primary Obligor or any other person or entity directly or contingently liable for the Obligations guaranteed hereunder, or against or with respect to the Primary Obligor's property (including, without limitation, property collateralizing the Primary Obligor Documents), arising from the existence or performance of this Guaranty.

(b) The liability of Guarantor under this Guaranty, and of any Other Guarantors, if any, under Other Guarantees given in favor of IFAI in connection with the Primary Obligor Documents, shall be joint and several and shall be irrevocable, unconditional and absolute, continuing in full force and effect according to its terms, until all of the Obligations hereby guaranteed have been fully satisfied. Guarantor covenants and agrees that any indebtedness of Primary Obligor to Guarantor is hereby subordinated to the obligations of Primary Obligor to IFAI, and that after any default under the Primary Obligor Documents or any of the other documents evidencing the transactions contemplated hereby, Guarantor shall hold any funds received from Primary Obligor in trust for IFAI to satisfy the obligations of Primary Obligor to IFAI and shall forthwith deliver such funds to IFAI in the form received. This subordination of the indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full.

7. **Assignment**. This Guaranty is assignable by IFAI without notice to Guarantor and Guarantor consents thereto. Guarantor's obligations under this Guaranty may not be delegated to any other person or entity without the prior written consent of IFAI. Any assignee of IFAI shall have all of the rights of IFAI hereunder and may enforce this Guaranty against Guarantor with the same force and effect as if this Guaranty were given to such assignee in the first instance. This Guaranty shall inure to the benefit of IFAI, and its successors and assigns, and shall be binding upon Guarantor and Guarantor's heirs, administrators, successors and assigns.

8. **Severability/Governing Law**. This Guaranty shall be effective when executed and delivered to IFAI. The Primary Obligor Documents and all related controversies shall be governed in all respects by, and construed in accordance with, the internal laws of the State of New York, without giving effect to New York choice of law principles. If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, it shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision to the extent that it is not prohibited or unenforceable, nor invalidate the other provisions hereof, all of which shall be construed liberally in favor of IFAI in order to effect the provisions hereof. Guarantor agrees to pay upon demand all of IFAI's costs and expenses, including reasonable attorneys' fees and court costs, in enforcing payment under this Guaranty, or in the prosecution or defense of any action or proceeding by or against IFAI or the Guarantor concerning any matter arising out of or connected herewith, including without limitation any of the foregoing arising in, arising under or related to a case under the United States Bankruptcy Code.

9. **Authentication.** This Guaranty may take electronic form (i.e., be in "Electronic Format") if generated and stored within a secure electronic medium designed for creating and facilitating transactions entered into using so-called "electronic signatures". This Guaranty may also be in paper form bearing an original ink signature; it may also take the form of a photocopy of such a signed paper document; it may be delivered in pdf or other fixed-file format; it may be an electronic facsimile, or it may be in any other format deemed acceptable by IFAI (each such executed/authenticated paper version of this Guaranty shall constitute a "Counterpart"). Guarantor agrees that whether in Electronic Format or in Counterpart form, each such version hereof shall constitute a binding and effective original record hereof enforceable for all legal and equitable purposes including all matters of evidence and the "best evidence" rule, and shall be binding upon and enforceable against Guarantor in accordance with its terms in any and all appropriate forums.

10. **Jury Trial Waiver. GUARANTOR HEREBY WAIVES ALL GUARANTOR'S RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS GUARANTY, THE PRIMARY OBLIGOR DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY, IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE A PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY, OF THE PRIMARY OBLIGOR DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY GUARANTOR WHO ACKNOWLEDGES THAT NO REPRESENTATIONS HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY OR THE PRIMARY OBLIGOR DOCUMENTS.**

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the 26 day of August, 2020.

***SIGNER REPRESENTS BEING AUTHORIZED TO BIND BORROWER TO THIS AGREEMENT, AND ACKNOWLEDGES THAT FALSE STATEMENTS ABOUT SUCH AUTHORITY MAY BE FRAUDULENT AND COULD RESULT IN PERSONAL LIABILITY***

**Guarantor has read and understood the terms of this Continuing Guaranty which applies to all current and future loans or leases by and between Primary Obligor and Isuzu Finance of America.**

**BBC Group NV, LLC**

Signed: ______________

Name: SIVA CHAMANIAN

Title: OWNER

**WITNESS:**

Signed: ______________

Print Name: Gabriel Costillo